**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TOMMY R. ORTIZ, an individual, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM EPPERSON, an individual, THOMAS ZUBIK, an individual, RAVEN SHEAD, an individual, BRENDA LEE, an individual, JANE DOE-MENTAL HEALTH TECHNICIAN, an individual, JOHN DOE-SECURITY GUARD 1, an individual, JOHN DOE-SECURITY GUARD 2, an individual, JOHN DOE-SECURITY GARD 3, an individual, JOHN DOE-SECURITY GUARD 4, an individual, JOHN DOE-SECURITY GUARD 5, an individual, JOHN DOE-SECURITY GUARD 6, an individual, JOHN DOE-SECURITY GUARD 7, an individual, and JOHN DOE-SECURITY GUARD 8, an individual, <br><br> Defendants. | Case No. 18 CV 3385 <br><br> Hon. Edmond E. Chang |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS
EPPERSON'S AND ZUBIK'S MOTION TO DISMISS**

Plaintiff, Tommy R. Ortiz ("Plaintiff"), by and through his undersigned counsel, for his Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants William Epperson ("Epperson") and Thomas Zubik ("Zubik"), states as follows:

**INTRODUCTION**

Plaintiff, after being consistently forced to urinate and defecate on himself due to Elgin Mental Health Center ("EMHC") employees preventing him from using the bathroom, suffered extreme physical pain and humiliation after being subjected to a retaliatory, overly-invasive search of his body and living area for a purported candy bar. Plaintiff complained about the EMHC

employees' actions restricting bathroom use to both EMHC's head of security (Epperson) and director (Zubik), and also told them that he had filed a lawsuit against them and other EMHC employees. Zubik told Plaintiff that the EMHC employees were "doing what we tell them to do," Epperson told Plaintiff that he "would be feeling the consequences for filing th[e] lawsuit," and soon thereafter, eight EMHC security guards, supposedly searching for a candy bar, squeezed Plaintiff's genitals, put their hands between Plaintiff's buttocks, and seized Plaintiff's personal items. The Second Amended Complaint (the "Complaint") contains nearly ninety well-pled allegations demonstrating valid claims for: (Count I) violation of the Eight Amendment against three EMHC employees; and (Count II) First Amendment retaliation against Epperson, Zubik, and eight other EMHC employees.

Epperson and Zubik now move to dismiss Count II of the Complaint (the "Motion"), primarily arguing that the Complaint does not sufficiently allege personal involvement by Epperson and Zubik. This argument, however, is a transparent attempt to dispose of the litigation prematurely because the Complaint sets forth a detailed chronology of events from which Epperson's and Zubik's retaliation may be plausibly inferred. Nothing that Epperson and Zubik raise in the Motion defeats Plaintiff's claim. For all of the reasons stated below, the Motion should be denied.

**WELL-PLED FACTS**

Plaintiff was incarcerated at the Cook County Department of Corrections in July 2017 before being transferred to EMHC in December 2017. Second Am. Compl. ("Compl.") ¶¶ 2, 4. Beginning in 2018, while being housed at EMHC's Hinton Unit, an EMHC employee[1] frequently

---

[1] The Complaint currently alleges that the EMHC employee who prevented Plaintiff from using the bathroom at EMHC's Hinton Unit is named Raven Shead. However, Plaintiff intends to seek leave to amend the Complaint to correct the name of this EMHC employee after receiving information from EMHC in response to a subpoena.

2

locked Plaintiff's cell, refused to open Plaintiff's cell to allow him to use the bathroom, told Plaintiff "to go ahead and shit and piss on [him]self," and laughed at Plaintiff after he was forced to urinate and/or defecate on himself. *Id.* ¶¶ 7, 19-26. After Plaintiff was forced to urinate and/or defecate on himself, this EMHC employee would instruct Plaintiff to state, "Please open my room door so that I can clean the shit out of my pants," before opening Plaintiff's cell. *Id.* ¶ 27. This EMHC employee would eventually unlock Plaintiff's cell, sometimes stating to Plaintiff, "You stink, go clean yourself up." *Id.* ¶ 28.

After his time in EMHC's Hinton Unit, Plaintiff was transferred to EMHC's Forensic Unit for months in 2018. *Id.* ¶¶ 32-33. In EMHC's Forensic Unit, two other EMHC employees refused to allow Plaintiff access to the communal bathroom, instructed Plaintiff to "piss" and "shit on [himself]," and laughed at Plaintiff. *Id.* ¶¶ 8-9, 34-39, 41-45, 47-48. When Plaintiff would ask for toilet paper in the Forensic Unit, these EMHC employees would ensure the communal bathroom was locked. *Id.* ¶ 42. Eventually, these EMHC employees would unlock the communal bathroom. *Id.* ¶ 49. Plaintiff believes that the EMHC employee in the Hinton Unit communicated with the EMHC employees in the Forensic Unit to encourage them to refuse Plaintiff access to the bathroom, requiring Plaintiff to urinate and defecate on himself. *Id.* ¶¶ 40, 46.

Both in the Hinton Unit and Forensic Unit, Plaintiff was only able to utilize a small washrag, soap, and water from the sink to attempt to clean himself up after being forced to defecate and/or urinate on himself, and as a result, he was unable to fully clean himself. *Id.* ¶¶ 29, 50. Due to the EMHC employees' actions while being housed in both the Hinton Unit and Forensic Unit, Plaintiff experienced extreme anxiety attacks and consistently felt depressed, humiliated, demoralized, and embarrassed. *Id.* ¶¶ 30-31, 51-52.

On many occasions, Plaintiff complained to Zubik, EMHC's director, and Epperson, EMHC's head of security, about the EMHC employees preventing Plaintiff from using the bathroom and causing him to defecate and/or urinate on himself. *Id.* ¶¶ 5-6, 53. Zubik informed Plaintiff that these EMHC employees "are doing what we tell them to do." *Id.* ¶ 54. Plaintiff completed several EMHC complaint forms and wrote letters to EMHC supervisors to complain about the EMHC employees' actions towards Plaintiff, but eventually, EMHC employees stopped providing Plaintiff with the required complaint forms. *Id.* ¶¶ 55-56. Plaintiff continued to write letters to EMHC supervisors. *Id.* ¶ 56.

On May 11, 2018, while still housed at EMHC, Plaintiff initiated this action by filing his original complaint with this Court (the "Original Complaint"). *Id.* ¶¶ 1, 57. Plaintiff informed both Epperson and Zubik that he had filed the Original Complaint. *Id.* ¶ 58. Epperson told Plaintiff that he "would be feeling the consequences for filing that lawsuit," and when Plaintiff asked Epperson if he was threatening him, Epperson smiled at Plaintiff and walked away. *Id.* ¶¶ 59-60.

On or around June 17 2018, Plaintiff was told that an EMHC nurse reported to EMHC security personnel that he was hiding a candy bar. *Id.* ¶ 62. Thereafter, eight EMHC security guards physically searched Plaintiff and his cell, and during this search, the EMHC security guards squeezed Plaintiff's genitals, put their hands between Plaintiff's buttocks, and seized personal items from Plaintiff's cell. *Id.* ¶¶ 10, 63-64. Plaintiff neither had a candy bar nor was hiding one, and the EMHC security guards who conducted the search never found a candy bar on Plaintiff's person or in his cell. *Id.* ¶ 66. Plaintiff experienced humiliation and physical pain as a result of the search, which Plaintiff believes was coordinated by Epperson and Zubik, among others. *Id.* ¶¶ 67-68.

**LEGAL STANDARD**

All that is required to overcome a motion to dismiss is that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need only provide "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (citations omitted). In considering a motion to dismiss, courts must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018) (alteration in original) (citation omitted).

"A court may dismiss a complaint pursuant to Rule 12(b)(6) only if it is clear that no relief is possible under any set of facts that could be established consistent with the allegations." *Chrissafis v. Cont'l Airlines, Inc.*, 940 F. Supp. 1292, 1295 (N.D. Ill. 1996) (citing *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). A "plaintiff can plead conclusions as long as those conclusions provide minimal notice of the claim." *Gelco Corp. v. Duval Motor Co.*, No. 02 C 5613, 2002 WL 31875537, at *7 (N.D. Ill. Dec. 26, 2002) (citation omitted). A well-pled complaint should be upheld on a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (citation omitted). Notice pleading differs from evidentiary proof and "does not imply 'plaintiff must allege [all evidence] at the outset.'" *Vincent v. City Colls. of Chi.*, 485 F.3d 919, 923-24 (7th Cir. 2007).

**ARGUMENT**

**I. Plaintiff Stated a Claim for First Amendment Retaliation Against Epperson and Klein.**

The elements of a First Amendment retaliation claim are: "(1) [the plaintiff] engaged in activity protected by the First Amendment; (2) [the plaintiff] suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [d]efendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). The defendants must have "caused or participated in [the] alleged constitutional deprivation," and "[a] complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 574, 573 (7th Cir. 2000) (first alteration in original) (citations omitted).

Count II of the Complaint sufficiently states a claim for First Amendment retaliation against Epperson and Klein. Specifically, the Complaint alleges that Plaintiff engaged in activity protected by the First Amendment by filing the Original Complaint. *See* Compl. ¶¶ 1, 57-58, 80. Further, the Complaint alleges that: (1) Plaintiff complained to Epperson and Zubik about the EMHC employees preventing Plaintiff from using the bathroom and forcing him to defecate and urinate on himself, *id.* ¶ 53; (2) Plaintiff informed Epperson and Zubik that he had filed the Original Complaint, *id.* ¶ 58; (3) Zubik told Plaintiff that the EMHC employees were "doing what we tell them to do" with respect to their preventing Plaintiff from using the bathroom and causing Plaintiff to defecate and/or urinate on himself, *id.* ¶ 54; (4) Epperson told Plaintiff that he "would be feeling the consequences for filing" the Original Complaint, *id.* ¶ 59; (5) Epperson smiled at Plaintiff and walked away when Plaintiff asked Epperson if he was threatening him, *id.* ¶ 60; (6) after Plaintiff's conversations with Epperson and Zubik, eight EMHC security guards unsuccessfully searched

6

Plaintiff and his cell for a candy bar by squeezing Plaintiff's genitals, putting their hands between Plaintiff's buttocks, and seizing personal items from Plaintiff's cell, *id.* ¶¶ 63-64, 66; and (7) Epperson and Zubik coordinated the search as a result of Plaintiff's filing the Original Complaint. *Id.* ¶ 68.

These allegations must be accepted as true for purposes of deciding this Motion. *See Cannici*, 885 F.3d at 479. As explained below, Epperson's and Zubik's arguments contradict the well-pled complaint, and therefore, must be rejected.

## II. Plaintiff Pled that Epperson and Zubik Were Sufficiently Involved in the Retaliatory Search.

Epperson and Zubik first argue that Plaintiff's First Amendment retaliation claim should be dismissed because Plaintiff failed to plead that Epperson or Zubik was involved in the deprivation of Plaintiff's First Amendment rights. Mot. at 5. Specifically, Epperson and Zubik claim that they were not involved in the retaliation against Plaintiff because the Complaint does not allege that Epperson or Zubik physically participated in the retaliatory search, or that they "ordered" the retaliatory search. *Id.* The problem with Epperson's and Zubik's argument is two-fold.

First, and fundamentally, this argument contradicts the well-pled allegations in the Complaint. Epperson and Zubik contend that the Complaint does not "link[] the search to" either of them. *Id.* To the contrary, the Complaint specifically alleges that "Zubik[ and] Epperson . . . coordinated the search as a result of [Plaintiff]'s initiating this action by filing the Original Complaint." Compl. ¶ 68. The Complaint further alleges that Plaintiff informed both Epperson and Zubik that the EMHC employees were preventing Plaintiff from using the bathroom and forcing him to defecate and urinate on himself. *Id.* ¶ 53. The Complaint also asserts that Plaintiff told both Epperson and Zubik that he had filed the Original Complaint, Zubik told Plaintiff that

7

the EMHC employees were "doing what we tell them to do," and Epperson told Plaintiff that he "would be feeling the consequences for filing" the Original Complaint. *Id.* ¶¶ 54, 58-59. These well-pled facts support the allegation that Epperson and Zubik were involved in, and coordinated, the retaliation against Plaintiff, and may not be disregarded or contradicted at this stage of the litigation. *See Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017) (On a motion to dismiss for failure to state a claim, a court "accept[s] all well-pled facts as true and construe[s] all inferences in the nonmovant's favor, granting the motion only when the complaint fails to allege facts sufficient to 'state a claim to relief that is plausible on its face.'" (citation omitted)).

Second, the cases that Epperson and Zubik cite in support of their argument are either inapposite or actually demonstrate that the Complaint sufficiently states a claim for First Amendment retaliation against them. First, in *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976 (N.D. Ill. 2009), the Court held that:

> The allegations that Plaintiff was a 'vocal political supporter of [the town president's political opponent]' during [the town president's political opponent]'s campaigns against [the town president], and that Defendants 'falsely arrested and maliciously prosecuted the Plaintiff . . . for the Plaintiff's political support of [the town president's political opponent],' satisfy Rule 8's liberal pleading requirement.

*Id.* at 990 (fourth alteration in original) (citations omitted).

Here, the Complaint alleges that Plaintiff complained of the EMHC employees' improper activity to Epperson and Zubik and informed them that he filed the Original Complaint. Compl. ¶¶ 53, 58. The Complaint further alleges that Zubik told Plaintiff that the EMHC employees' improper activity was occurring at his direction, Epperson told Plaintiff that he "would be feeling the consequences for filing" the Original Complaint, and Epperson and Zubik coordinated the retaliatory search of Plaintiff. *Id.* ¶¶ 54, 59, 68. Just like in *Gardunio*, the Motion should be denied because the Complaint provides "enough detail to give [Epperson and Zubik] fair notice of what

8

the claim is and the grounds upon which it rests." *See Tamayo*, 526 F.3d at 1083 (citations omitted).

In the next case cited by Epperson and Zubik, *Patterson v. Johnson*, No. 17-cv-1067-MJR, 2017 WL 6021832 (S.D. Ill. Dec. 5, 2017), the issue was whether one of the named defendants, a supervising correctional center employee, ***physically performed*** the retaliatory activity, not whether the plaintiff pled sufficient facts to allege that he ***coordinated*** the retaliatory activity. *See id.* at *10. Here, the issue is not whether Epperson and Zubik were physically involved in the retaliatory search of Plaintiff, but whether they coordinated it, which Plaintiff specifically alleges with supporting facts. *See* Compl. ¶¶ 53-54, 58-59, 68. Despite *Patterson*'s factual differences, the Court in *Patterson* recognized that a retaliation claim is stated when a complaint "sets forth 'a chronology of events from which retaliation may be plausibly inferred.'" 2017 WL 6021832, at *10 (citation omitted). The Complaint does this with respect to Epperson and Zubik, especially considering the fact that the Complaint must be construed "in the light most favorable to [P]laintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [Plaintiff's] favor." *See Cannici*, 885 F.3d at 479.

Next, in *Van Dyke v. Barnes*, No. 13–cv–5971, 2015 WL 148977 (N.D. Ill. Jan. 12, 2015), the Court held that "personal involvement" was sufficiently alleged when the complaint asserted that "*all* the . . . [d]efendants" were involved in the retaliatory action. *Id.* at *7 (emphasis in original). Just like the plaintiff in *Van Dyke*, Plaintiff here alleges that Zubik and Epperson were included in the group of individuals who "coordinated the [retaliatory] search" of Plaintiff. *See* Compl. ¶ 68.

Last, in *Romero-Arrizabal v. Ramos*, No. 16-cv-5967, 2019 WL 1281968 (N.D. Ill. Mar. 20, 2019), the Court found that allegations that two employees "approved" and "directed and

9

ratified [alleged retaliatory] actions" were insufficient in part because "it [wa]s far from clear" that these two employees had supervisory authority over the individuals who physically performed the retaliatory activity. *Id.* at *3. The Court also found these allegations insufficient because "it [wa]s quite unclear . . which actions" were allegedly "approved," "directed," and "ratified." *Id.* In this case, to the contrary, the Complaint makes clear that Zubik, as the director of EMHC, and Epperson, as head of security at EMHC, had supervisory authority over the EMHC employees who physically participated in the retaliatory search. Compl. ¶¶ 5-6, 10. Moreover, the Complaint specifies that it was the retaliatory search that Epperson and Zubik coordinated. *Id.* ¶ 68. The allegations in *Ramos* fall well short of the level of detail and "chronology of events" described in the Complaint. *See Zimmerman*, 226 F.3d at 573.

Accordingly, the Motion should be dismissed because the Complaint sets forth well-pled facts supporting the allegation that Epperson and Zubik coordinated the retaliation against Plaintiff.

**III.     Epperson and Zubik Attempt to Use the EMHC Nurse as a Red Herring.**

Epperson and Zubik claim that Plaintiff's allegation relating to the EMHC nurse mandates dismissal of Count II against them, but in reality, this allegation was made *only because it is what Plaintiff was told*. Plaintiff alleges that "[u]pon information and belief, on or around June 17, 2018, an EMHC nurse reported to EMHC security personnel that Ortiz was hiding a candy bar." Compl. ¶ 62. The explanation for this allegation is simple: when Plaintiff asked why he and his cell were being searched, he was informed that a nurse reported that he had a candy bar. Whether an EMHC nurse actually reported as such, whether Epperson and Zubik told one of the EMHC security guards to provide this bogus reason to Plaintiff, and whether Epperson and Zubik told an EMHC nurse that Plaintiff had a candy bar, are all questions to be probed during discovery. To

be sure, Paragraph 62 of the Complaint in no way changes the fact that Plaintiff has satisfied the liberal pleading standards of Rule 8, and the Court should refuse to allow EMHC's director and head of security to skirt liability based on Plaintiff merely alleging what EMHC itself told him as a pretext for the retaliatory search.

## CONCLUSION

For all these stated reasons, Plaintiff, Tommy R. Ortiz, respectfully requests that this Court deny Defendants William Epperson's and Thomas Zubik's Motion to Dismiss, and provide any further relief deemed necessary and proper. In the alternative, should the Court be inclined to grant any portion of the Motion, Plaintiff respectfully requests leave to file an amended complaint.

Dated: June 3, 2020

Respectfully submitted,

**TOMMY R. ORTIZ**

By: */s/ Zachary R. Clark*
One of his Attorneys

William J. Serritella, Jr.
wserritella@taftlaw.com
Zachary R. Clark
zclark@taftlaw.com
TAFT STETTINIUS AND HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Tel: (312) 527-4000
Fax: (312) 527-4011

27320307.5