**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOMMY R. ORTIZ, ) | |
| ) | |
| Plaintiff, ) | No. 1:18-CV-03385 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| ) | |
| William Epperson, Thomas Zubik, ) | |
| Rhaven Bartee, Brenda Lee, Jane Doe ) | |
| Mental Health Technician, Samantha ) | |
| McDorman, Nathan Boyd, Ralph Carter, ) | |
| Alfreda Fletcher, LaDonald Scott, Michelle ) | |
| Santos, John Doe Security Guard 1, and ) | |
| John Doe Security Guard 2, all in their ) | |
| individual capacities, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Tommy Ortiz brings this civil rights case against administrators and staff at the Elgin Mental Health Center, where he was in custody back in 2018.[1] Ortiz alleges first that, for several months in 2018, Health Center staff members denied him bathroom access, creating conditions of cruel and unusual punishment in violation of the Eighth Amendment. R. 66, Third Am. Compl. ¶¶ 19–52.[2] Second, he alleges that, after he exercised his First Amendment right to file this lawsuit, Health Center administrators and staff retaliated against him with an unjustified and humiliating cell inspection and body search. *Id*. ¶¶ 57–68. Pending now are two motions to dismiss

---

[1]This Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number if applicable.

1

this second claim. Defendants Thomas Zubik and William Epperson, who are Health Center administrators, have filed one of the motions to dismiss. R. 68, Epperson/Zubik Mot. to Dismiss. Separately, Defendants Samantha McDorman, Ralph Carter, Alfreda Fletcher, LaDonald Scott, Michelle Santos, and Nathan Boyd (for convenience's sake, the "Security Defendants") have filed a separate motion. R. 88, Sec. Defs. Mot. to Dismiss; R. 99.[3] For the reasons discussed in this Opinion, both motions are denied.

## I. Background

The Court accepts all well-pleaded factual allegations in the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Tommy Ortiz was in custody at the Elgin Mental Health Center from early December 2017 through December 2018. Third Am. Compl. ¶¶ 4, 15. His problems began sometime in 2018, when he was housed in the Hinton Unit. *Id.* ¶ 16. In the Hinton Unit, Ortiz was supposed to have access to a bathroom in his cell, and to two communal bathrooms outside his cell. *Id.* ¶ 17. But when Ortiz was put in the day room, as he often was, Rhaven Bartee or another Health Center employee would lock his cell, cutting him off from his own bathroom. *Id.* ¶¶ 18–19. When Ortiz was in the day room and needed to relieve himself, he would ask Bartee to let him back into his cell, or unlock one of the communal bathrooms, which were apparently also locked. *Id.* ¶ 20. Bartee often denied Ortiz's repeated requests, telling him to "go ahead and shit and piss on yourself." *Id.* ¶¶ 21–23. Unable to access bathroom facilities, Ortiz

---

[3]The unopposed motion of Nathan Boyd, R. 99, to join the dismissal motion of the other Security Defendants is granted.

2

was often forced to defecate or urinate on himself, after which Bartee would still refuse to let him into a bathroom, sometimes laughing at him. *Id.* ¶¶ 24–26. When Bartee finally allowed Ortiz bathroom access, Ortiz could not fully clean himself up with the washcloth, soap, and sink provided. *Id.* ¶¶ 28–29. These experiences caused him depression, anxiety, and humiliation. *Id.* ¶¶ 30–31.

After spending some unspecified number of months in the Hinton unit, Ortiz was transferred to the Forensic Unit at the Health Center, where he allegedly experienced virtually the same mistreatment. Third Am. Compl. ¶¶ 32–33. He alleges a similar pattern of being denied bathroom access while in the day room, forced to soil himself, humiliated by the staff, and only belatedly allowed bathroom access to clean himself with meager supplies. *Id.* ¶¶ 34–45, 47–50. Ortiz believes that Bartee encouraged the staff in the Forensic Unit, specifically Defendants Lee and Jane Doe, to treat him this way. *Id.* ¶ 46. These experiences, too, caused Ortiz depression, anxiety, and humiliation. *Id.* ¶¶ 51–52.

Ortiz complained repeatedly about the treatment he suffered at the hands of Bartee, Lee, and Jane Doe. Third Am. Compl. ¶ 53. Throughout 2018, the Health Center's head of security was William Epperson. *Id.* ¶ 5. Thomas Zubik was the director of the Health Center starting in March 2018. *Id.* ¶ 6. Ortiz complained to both. *Id.* ¶ 53. At some point, in response to Ortiz's complaints about Bartee, Lee, and Jane Doe, Zubik told Ortiz they were "doing what we tell them to do." *Id.* ¶ 54. Ortiz completed complaint forms and wrote letters to Health Center supervisors about the

3

bathroom-access problem. *Id.* ¶ 55. Eventually, Health Center staff stopped giving him complaint forms, but he kept writing letters. *Id.* ¶ 56.

On May 11, 2018, Ortiz filed the original complaint in this lawsuit. *Id.* ¶ 57; R. 1, Original Complaint. He told several Health Center employees, including Epperson and Zubik, that he had filed the lawsuit. Third Am. Compl. ¶ 58. After he told Epperson about filing his complaint, Epperson threatened that Ortiz "would be feeling the consequences for filing that lawsuit." *Id.* ¶ 59. Ortiz asked Epperson if he was threatening him, and Epperson smiled and walked away. *Id.* ¶ 60.

Around one month later, on around June 17, 2018, a Health Center nurse apparently (according to the Defendants) reported to security that Ortiz was hiding a candy bar in his cell. Third Am. Compl. ¶ 62.[4] After that report, Defendants McDorman, Boyd, Carter, Fletcher, Scott, Santos, and the John Doe Guards searched Ortiz and his cell. *Id.* ¶ 63. They squeezed Ortiz's genitals, put their hands between his buttocks, and seized personal items from his cell. *Id.* ¶ 64. When Ortiz asked for the names of the guards searching him, they laughed and refused to tell him. *Id.* ¶ 65. Ortiz had no candy bar in the cell and the search did not find one. *Id.* ¶ 66. The search was humiliating and painful. *Id.* ¶ 67. Ortiz alleges that Zubik, Epperson, Bartee, Lee, Jane Doe, McDorman, Boyd, Carter, Fletcher, Scott, Santos, and the John Doe Guards coordinated the search in retaliation for his filing this lawsuit. *Id.* ¶ 68.

Ortiz's court-recruited counsel has filed two amended complaints, culminating in the operative Third Amended Complaint. R. 66, Third Am. Compl. Both sets of

---

[4]The meaning and importance of this allegation are debated in the parties' briefing and will be discussed further in the Analysis section below.

4

Defendants have moved to dismiss the claims. Epperson and Zubik filed one motion. R. 68, Epperson/Zubik Mot. Dismiss. McDorman, Carter, Fletcher, Scott, Santos, and Boyd filed the other. R. 88, Sec. Defs. Mot. Dismiss. (Bartee has not been served yet, R. 96; Lee was served, R. 86-1, and appears to be in default; and Jane Doe remains unidentified.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need include only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

---

[5] This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

Both dismissal motions challenge Ortiz's retaliation claim. To succeed on this claim, Ortiz must adequately allege that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009) (cleaned up). None of the Defendants dispute that Ortiz has met the first two requirements, so only the third is up for debate.

Eventually, when Ortiz must *prove* this claim, he will have to prove that his protected activity motivated the Defendants' retaliatory action—and he may do so by either direct or circumstantial evidence. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008). At the *pleading* stage, he also is entitled to all reasonable inferences, on top of the notion that direct evidence is not the sole way of proving a retaliation claim—circumstantial evidence counts too. Timing is one key fact from which to draw inferences for retaliation claims: "A complaint states a claim for retaliation when it sets forth a chronology of events from which retaliation may plausibly be inferred." *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (cleaned up). As explained

next, although it is a close call, the Court concludes that Ortiz has adequately pled the retaliation claim against all of the Defendants.

### A. Zubik and Epperson

Zubik and Epperson were both supervisors at the Health Center: Zubik was director of the Center, and Epperson was its security chief. Third Am. Compl. ¶¶ 5–6. Under 42 U.S.C. § 1983, they cannot be held responsible for their supervisees' actions on a *respondeat superior* theory of liability—they must have been personally involved in the wrongdoing to be held liable. *Zimmerman*, 226 F.3d at 574. Epperson and Zubik argue that Ortiz has not adequately alleged that they were "personally involved in any alleged constitutional deprivation." R. 69, Epperson/Zubik Brief at 2. Accepting Ortiz's factual allegations as true, and drawing all reasonable inferences in his favor, the Court concludes that he has adequately alleged Epperson's and Zubik's personal involvement.

The key paragraph (but not the only paragraph) in support of Ortiz's claim against not just Zubik and Epperson, but the Security Defendants as well, is this:

> Upon information and belief, Defendants Zubik, Epperson, Bartee, Lee, Jane Doe, McDorman, Boyd, Carter, Fletcher, Scott, Santos, and the John Doe Guards coordinated the search as a result of Ortiz's initiating this action by filing the Original Complaint.

Third Am. Compl. ¶ 68. Zubik and Epperson call this an "unfounded proposition" that is "speculative and conclusory." Epperson/Zubik Br. at 6.[6] They invoke *Bell Atlantic*

---

[6]The Defendants also assert that the paragraph "rest[s] shakily upon information and belief," but do not cite to any Seventh Circuit authority disqualifying allegations that rest on information and belief. Epperson/Zubik Br. at 5. That is not to say that prefacing an allegation with "on information and belief" is a get-out-of-Rule-11-card. All allegations must be

*Corporation v. Twombly*, 550 U.S. 544, 567–68 (2007). It is true, of course, that courts need only accept a complaint's *factual* allegations as true; bare conclusions do not enjoy that entitlement. But the allegation that the Defendants engaged in a "coordinated search" *is* a factual assertion that must be accepted as true.

Context is important here. *Twombly* applied its pleading standard to a complex antitrust class action alleging that "major telecommunications providers engaged in certain parallel conduct unfavorable to competition," in violation of the Sherman Act. *Twombly,* 550 U.S. at 548–49. In expressing skepticism about the allegations, the Supreme Court explained that experts in the field agreed that companies might engage in parallel conduct for plenty of reasons besides an antitrust conspiracy. *Id.* at 553–54. In large part because of a significant volume of court decisions and other sources holding that parallel conduct could not by itself adequately allege an antitrust conspiracy, the Supreme Court concluded that the parallel-conduct allegation was equivalent to a bare pleading of "conspiracy," and thus insufficient to state a claim. *Id.* at 567–68. The plaintiffs were asking for inferences that had already been established as implausible, given the complex nature of interstate commerce and companies' parallel behavior.[7]

---

premised on a reasonable basis in law and fact. But the defense does not develop an argument undermining a plaintiff's reliance on the prefatory language.

[7]The other Supreme Court case that is often cited in tandem with *Twombly* also addresses a complex set of facts. Javaid Iqbal filed a *Bivens* action "against 34 current and former federal officials [including the Attorney General, John Ashcroft, and FBI Director Robert Mueller] and 19 'John Doe' federal corrections officers." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). His lawsuit alleged constitutional violations in the conditions of his confinement on terrorism charges, as part of an alleged top-down policy of discrimination based on race and national origin purportedly implemented by the Attorney General and the FBI Director. *Id.* at 667–69. When the Supreme Court applied its decision in *Twombly* to dismiss

Ortiz's allegations, on the other hand, do not implicate the decision-making processes of major national companies or interstate commercial markets. Ortiz's case is simple and relatively small-scale, accusing 13 individuals at the same facility in engaging in a course of conduct directed only at him. He alleges, as a foundational matter, that he told Zubik and Epperson about his lawsuit. Third Am. Compl. ¶ 58. When Ortiz alleges that the Defendants coordinated the search of his cell, he is simply alleging that Zubik, Epperson, and the other 11 employees at some point communicated with each other and agreed on a plan of retaliation. That is a reasonable inference to draw from the allegations; indeed, the Court is not just permitted, but required, to draw all reasonable inferences in Ortiz's favor at this stage.

What's more, Ortiz does not rest his claims solely on the allegation that the Defendants coordinated the search or the fact that Epperson and Zubik knew about his lawsuit. He also reports that each supervisory defendant made at least one suspicious comment that supports an inference of retaliatory motive. After Ortiz complained to Director Zubik, Zubik allegedly told him that Bartee, Lee, and Jane Doe were "doing what we tell them to do." Third Am. Compl. ¶ 54. Considering that Ortiz was reporting that those staff members repeatedly denied him bathroom access, forced him to defecate and urinate on himself in the day room, and mocked him all the while, this is a striking response. It suggests that Zubik knew and approved what the staff members were doing, and a plausible inference is that he would not take

---

Iqbal's conspiracy claims against those officials, the Supreme Court again was operating in a context where the plaintiff had relied on large-leap inferences of a conspiracy. *Id.* at 680–81. The inferences requested by Ortiz are of a much smaller, more plausible order of magnitude.

9

kindly to Ortiz filing a lawsuit. Considering this statement in tandem with Ortiz's allegation that Zubik coordinated with other Defendants to orchestrate the cell search, Ortiz has stated facts from which to infer that Zubik had a retaliatory motive.

Epperson's alleged threat is even more obviously incriminating. Ortiz claims that Epperson told Ortiz that he "would be feeling the consequences for filing that lawsuit." Third Am. Compl. ¶ 59. When Ortiz asked Epperson if that was a threat, Epperson just smiled and walked away. *Id.* ¶ 60. Although Ortiz does not give a date, the conversation could not have occurred before Ortiz filed this lawsuit on May 11, 2018. That means that at most, only five weeks passed between this ominous conversation and the allegedly retaliatory cell search on June 17. The Defendants suggest that this timing does not support an inference of retaliation and cite to a Seventh Circuit case suggesting that only a few days should elapse between the protected activity and the retaliatory act. Epperson/Zubik Br. at 3. In that case, however, the Seventh Circuit explained that if a plaintiff seeks to rely *only* on timing to prove retaliation, the gap should be very short. *Kidwell v. Eisenhauer,* 679 F. 3d 957, 966 (7th Cir. 2012). Ortiz does not rely only on timing: the retaliatory nature of the threat itself is powerful evidence. Ortiz also alleges that Zubik and Epperson knew about his lawsuit, that each made threatening comments to him about the complaints, and that the guards conducting the search engaged in serious misconduct (more on that below). Taken together, these allegations adequately state a claim of retaliation.[8]

---

[8] The Defendants cite several district court cases in support of their position that the Complaint relies on insufficient factual allegations. Epperson/Zubik Br. at 5. These cases are all non-binding and distinguishable from the case at hand. In the response brief, Ortiz ably points out many of the distinguishing features, and the Court need not repeat those points

10

Finally, all of the Defendants argue that Ortiz has defeated his own claim by alleging that his cell was searched because a nurse reported that he was hiding a candy bar. Epperson/Zubik Br. at 5–6; R. 89, Security Defs. Brief at 4–5. In response, Ortiz clarifies that the officers searching his cell *told* him that they were searching it because a nurse had reported he had a candy bar. R. 71, Pl. Resp. to Epperson/Zubik Br. at 10. He explains that he did not mean to plead it as an absolute fact in his Complaint—he was just repeating what the officers themselves asserted, not adopting it as true. *Id.* Although the Court understands what Ortiz is getting at—and has seen this kind of mistaken pleading before—the Complaint just does not read as Ortiz now tells us he intended. The allegation says, in full, "Upon information and belief, on or around June 17, 2018, an EMHC nurse reported to EMHC security personnel that Ortiz was hiding a candy bar." Third Am. Compl. ¶ 62. If Ortiz meant to say that he only heard this story from the officers and that it is a pretext or a lie, then he should have said so explicitly.

Having said that, Ortiz's explanation does make sense—it is not as if he had personal knowledge of the nurse's report, so it would be odd for him to allege and to admit that she in fact had made the report. In any event, the inartful wording is not fatal to the retaliation claim. There is nothing incompatible between the allegation,

---

here. R. 71, Pl. Resp. to Epperson/Zubik Br. at 8–10. Most importantly, the Defendants base their argument on the premise that Ortiz has not pled *facts* in support of his claims, which this Court rejects. The cited cases are therefore not persuasive. The same can be said for *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011) (cited in R. 74, Epperson/Zubik Reply at 1), in which the Seventh Circuit held that the plaintiff had not pleaded facts to support a conspiracy claim. Here, as discussed earlier, Ortiz *has* pled facts, which puts him in a different position.

11

as pleaded, that a nurse reported that Ortiz had a candy bar and the allegation that the Defendants coordinated a retaliatory search.[9] For example, the Defendants could have been waiting for some excuse to humiliate Ortiz and seized on the nurse's report. Or the nurse could have fabricated the report. Ortiz alleges that he did not have a candy bar and no candy bar was found, which strongly suggests that the nurse's report, if it was made at all, was made in bad faith. Third Am. Compl. ¶ 66. The retaliation claim against Zubik and Epperson remains intact.

### B. Security Defendants

McDorman, Carter, Fletcher, Scott, Santos, and Boyd (for convenience's sake, the Security Defendants) make similar arguments to Zubik and Epperson's in support of their motion. First, however, they independently argue that Ortiz has not alleged that the guards knew about the lawsuit, and thus has not alleged that the lawsuit could have been a motive for the search. Security Defs. Brief at 4. This argument relies on discounting the key paragraph in which Ortiz alleged that the Defendants "coordinated the search as a result of Ortiz's initiating this action by filing the

---

[9]Epperson and Zubik cite two Seventh Circuit cases, but they are easily distinguishable from the case at hand. Epperson/Zubik Reply at 10. In one, the Seventh Circuit concluded that a retaliation claim had been prematurely dismissed, in part because there was "[n]o other explanation for Gomez's transfer" at that stage. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). This case-specific reasoning does not change the pleading standard, which is not that the plaintiff must allege that retaliation is the *only* possible explanation; instead, Ortiz need only allege that it is a *plausible* explanation. The other Seventh Circuit case cited by the Security Defendants concluded that the plaintiff had defeated his own retaliation claim by submitting documentation showing that he had been disciplined for serious misconduct, which he did not dispute. *Sanders v. Bertrand*, 72 F. App'x 442, 445 (7th Cir. 2003). Ortiz, by contrast, has always vehemently disputed that he had a candy bar—the alleged basis of the search. Also, *Sanders* was issued before January 1, 2007, so the prior Seventh Circuit Rule bans citation to the unpublished order. *See* Seventh Circuit R. 53(b)(2) (eff. before Jan. 1, 2007).

12

Original Complaint." Third Am. Compl. ¶ 68. For the reasons already discussed, the Court considers this a factual allegation entitled to the presumption of truth at this stage of the litigation. Because Ortiz alleges that the Security Defendants coordinated the search "as a result" of his lawsuit, the Court necessarily infers that the Security Defendants knew about the lawsuit.

Ortiz has alleged other facts that, taken as true and coupled with reasonable inferences, support his retaliation claim against the Security Defendants. First, there was the statement by Epperson, the head of *security*, that Ortiz would face consequences for his lawsuit. Third Am. Compl. ¶ 59. The Security Defendants work under Epperson's supervision, and it is reasonable to infer that he told them about the Complaint at some time between his conversation with Ortiz (no earlier than May 11) and the cell search on June 17. Second, Ortiz has alleged that he suffered an unnecessarily painful, invasive, and humiliating cell search, which suggests, as he argues, that the Security Defendants were meting out punishment because he had filed the lawsuit. R. 93, Pl. Resp. to Security Defs. at 6. The Complaint says that his cell was searched based on a report that he had a candy bar, which he did not have, and which was not found. Third Am. Compl. ¶¶ 62, 66. While searching for this nonexistent candy bar, the Security Defendants "squeezed Ortiz's genitals, put their hands between Ortiz's buttocks, and seized personal items from Ortiz's cell." *Id.* ¶ 64. It is difficult to understand why a search for a candy bar would require those invasive measures. Equally difficult to understand is why *eight* security officers were needed to search one inmate and his cell, and what could make them laugh at the inmate

13

when he asked their names. *Id.* ¶ 63. Taking the reasonable inference in Ortiz's favor—which, again, at this stage is required—means that the search was executed in an intentionally aggressive and humiliating way, at Epperson's or Zubik's direction, in retaliation for Ortiz exercising his First Amendment rights.

Lastly, it is worth noting that the Supreme Court has cautioned against applying overly stringent pleading requirements to civil rights plaintiffs even in a post-*Twombly* world. For example, in a *per curiam* opinion, the Supreme Court reversed a lower court's dismissal of the plaintiffs' due process claims based on the failure to specifically cite 42 U.S.C. § 1983. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). The Supreme Court reasoned that "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." *Id.* In support of this proposition, the opinion approvingly cited a pre-*Twombly* case that refused to apply a heightened pleading standard to employment discrimination claims. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). *Swierkiewicz* noted that a Complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (cleaned up). In the employment discrimination context, the plaintiff did enough to state a claim when he alleged that he had been fired because of protected characteristics and provided some details about the events leading to his termination and the people involved. *Id.* at 514. Ortiz has certainly exceeded that pleading standard.

Ortiz has done enough for his retaliation claim to survive these dismissal motions, and he is now entitled to discovery to find out just how far the claim can take him. Having said that, it bears noting that after the pleading stage, Ortiz must discover and offer *evidence* in support of his claims. And, ultimately, at a trial he would bear the burden to show that his proffered facts are true and at a trial he would no longer enjoy the advantage of all reasonable inferences being automatically drawn in his favor. He ought to consider making a reasonable settlement demand before facing these burdens; if he loses at summary judgment or at trial, then he will be responsible for the defense's costs. Fed. R. Civ. P. 54(d)(1).

### IV. Conclusion

The Defendants' motions to dismiss the retaliation claims, R. 68, 88, are denied (Defendant Boyd's motion to join the dismissal motion of the Security Defendants, R. 99, is granted, but the dismissal motion is denied). The parties shall file a joint status report by April 9, 2021, so that discovery can begin. In the status report, Ortiz also should discuss the status of service on Bartee; whether Ortiz is going to seek default against Lee; and the status of identifying Jane Doe.

ENTERED:

           s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 30, 2021